**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL PENSION FUND,** | ) | |
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL WELFARE FUND,** | ) | |
| **CHICAGO & VICINITY LABORERS'** | ) | |
| **DISTRICT COUNCIL RETIREE HEALTH** | ) | |
| **AND WELFARE FUND, and CATHERINE** | ) | |
| **WENSKUS, not individually but as** | ) | |
| **Administrator of the Funds,** | ) | |
| | ) | **Case no.** 25 C 1162 |
| **Plaintiffs,** | ) | |
| | ) | **Judge:** |
| **v.** | ) | |
| | ) | |
| **BANKS MASONRY CONSTRUCTION, LLC,** | ) | |
| **an Illinois corporate entity,** | ) | |
| **Defendant.** | ) | |

## COMPLAINT

NOW COME Plaintiffs Chicago & Vicinity Laborers' District Council Pension Fund, Welfare Fund, Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds (collectively herein the "Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska and Sara S. Schumann, for their Complaint against Defendant Banks Masonry Construction, LLC, and state the following:

## FACTS COMMON TO ALL COUNTS

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2),

and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by Funds' Trustees to act on behalf of Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago & Vicinity Training Fund, Industry Funds, and with respect to the collection by Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago & Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant Banks Masonry Construction, LLC (the "Company") is an Illinois corporate entity that conducts business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union operates and maintains its office within the District. The Union and Company are parties to collective bargaining agreements, from February 3, 2025 to present. (A true and accurate copy of the Company's "short form" agreement entered into between the Union and Company which adopts and incorporates Master Agreements between the Union and various employer associations,

2

and binds Company to the Funds respective Agreements and Declarations of Trust is attached hereto as Exhibit A), The short form and the Master Agreements together are collectively referred to as the Agreement or the CBA.

7. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago & Vicinity Training Fund ("Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council ("Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund ("Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as the collection agent for overdue contributions to those funds, which are collectively referred to as Industry Funds or Ancillary Funds.

8. The Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, retiree health and welfare benefits and for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed

3

liquidated damages and interest.

9.      The respective Pension, Welfare, and Retiree Health and Welfare Declarations of Trust Agreements provide their respective Trustees with the power to formulate, establish and maintain collection procedures for the collection of contributions, and those actions, procedures and policies are binding upon all Contributing Employers.

10.      The Funds' Amended and Restated Collection Policies and Procedures provide that in the event Funds file suit against a Contributing Employer, any liquidated damages incurred by the Contributing Employer after the lawsuit is filed shall be assessed liquidated damages at twenty percent (20%) of the contributions owed.  This Collection Policy was adopted by the respective Trustees for the Pension, Welfare, and Retiree Health and Welfare Funds.

11.      The CBA provides that in the event the Trustees refer an account to legal counsel for collection of delinquent fringe benefit contributions the delinquent employer is liable for the Funds' reasonable attorneys' fees, audit costs, interest and filing costs incurred in the collection process.

12.      The Funds' Collection Policy provides any delinquent contributions owed by a Contributing Employer shall bear interest in the amount of twelve percent (12%) per annum, compounded from the due date until the obligation is fully satisfied.

13.      In addition to fringe benefit reports, the CBA obligates Company to monthly submit and pay Dues Reports.  Company is required to deduct from the wages of employees covered by said contract working dues in the amount of three and three-quarter percent (3.75%) of gross wages and shall remit those amounts monthly to the Union.

14.      The CBA also requires Company to pay contributions to the Industry Funds.  These contributions are paid as part of the Dues Reports.   The CBA requires Company to pay eight cents

($.08) for each hour worked by employees covered by the CBA to the Chicago Area Independent Construction Association ("CAICA"), seven cents ($.07) for each hour to the Chicago-Area Laborers-Employers Cooperation and Educational Trust ("LECET") and seventeen cents ($.17) per hour to the Laborers' District Council Laborer Management Cooperation Committee ("LMCC") for hours worked prior to June 1, 2023 and ($.19) for hours worked after that date . Thus, the total Industry Fund contribution is thirty-two cents ($.32) per hour for those hours prior to June 1, 2023 and thirty-four cent per hour for those hours worked after that date.

15.     Dues Reports and contributions are due by the 10th day following the month in which the work was performed.  Dues Reports and contributions that are not submitted in a timely fashion are assessed liquidated damages at ten percent (10%) of the union dues report amount.

16.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues, which should have been or were deducted from the wages of covered employees.

17.     The Agreement and the Funds' respective Agreements and Declarations of Trust require Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

18.     The Agreement further requires Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

19.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company failed to submit its books and records as requested by the Funds' designated independent auditing firm of Richard J. Wolf and Company, Inc. ("Wolf"), covering the period of February 1, 2025 through present ("Audit"), and thereby depriving the Funds of information and income necessary to administer the respective

Funds. A copy of the unable letter from Wolf to the Funds is attached hereto as Exhibit B.

20.     Company's actions in failing to submit to the Wolf Audit violate Section 515 of ERISA, 29 U.S.C. §1145 and Section 301 of the LMRA.

**COUNT I**
**(Failure To Submit Delinquent Employee Benefit Contributions**
**For the Audit Period February 1, 2025 to the Present)**

21.     The Funds re-allege and incorporate the allegations contained in paragraphs 1-20 of this Complaint.

22.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company performed covered work during the period of February 1, 2025 to the present, but:

(a)     failed to report and pay all contributions owed to the Funds from February 1, 2025 to present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer that Fund and jeopardizing the pension benefits of participants and beneficiaries;

(b)     failed to report and pay all contributions owed to the Funds from February 1, 2025 to present, thereby depriving the Health and Welfare Fund contributions, income and information needed to administer that Fund and jeopardizing the health and welfare benefits of participants and beneficiaries;

(c)     failed to report and pay all contributions owed to Funds from February 1, 2025 to present, thereby depriving the Retiree Welfare Funds of contributions, income and information needed to administer that Fund and jeopardizing the Retiree Welfare benefits of participants and beneficiaries;

(d)     failed to report and pay all contributions owed to the Funds from February 1, 2025

to present, thereby depriving the Training Fund of contributions, income and information needed to administer that Fund and jeopardizing the Training Fund benefits of the participants and beneficiaries;

(e)     failed to report and pay all contributions owed to the Funds from February 1, 2025 to present, thereby depriving the Industry Funds of contributions, income and information needed to administer those Industry Funds and jeopardizing the benefits of the participants and beneficiaries.

23.     Pursuant to the Agreement and the Funds' Agreements and Declarations of Trust, Company is liable for the liquidated damages assessed against the unpaid amounts owed from February 1, 2025 to present at twenty percent (20%) for the unreported monthly amount(s).

24.     The Company failure to submit to the Audit and to timely submit and pay its monthly reports of fringe benefit contributions violates Section 515 of ERISA, 29 U.S.C. §1145.

25.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the  Funds' respective Trust Agreements, Company is liable to Funds for the unpaid contributions, as well as interest and liquidated damages on all unpaid contributions, and obligated for accumulative liquidated damages on any untimely paid contributions, audit costs, reasonable attorneys' fees and court costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs the Funds respectfully request that this Court:

a.     order Banks Masonry Construction, LLC to submit its books and records for the Audit, covering the period of February 1, 2025 to present;

b.     enter judgment in sum certain in favor of the Funds and against Defendant Banks Masonry Construction, LLC, for the amounts owed per Defendant's unpaid monthly fringe benefit

reports from February 1, 2025 to present, as determined by the Audit, plus liquidated damages, accumulated interest, audit costs and Plaintiffs' reasonable attorney fees and costs;

c.      enter judgment in favor of the Funds and against the Defendant Banks Masonry Construction, LLC, for its monthly fringe benefit reports that become due and are unpaid during the pending litigation plus liquidated damages, interest, audit costs and Plaintiffs' reasonable attorney fees and costs;

d.      order Banks Masonry Construction, LLC., to obtain and maintain a surety bond in accordance with the terms of the Agreement; and

e.      award Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II
### (Failure to Submit Reports and/or Pay Monthly Union Dues)

26.     The Funds re-allege and incorporate the allegations contained in paragraphs 1-25 of this Complaint.

27.     Pursuant to agreement, the Funds are duly designated to serve as collection agents for the Union in that capacity the Funds have been given the authority to collect from employers union dues which should have been or were deducted from the gross wages of covered employees.

28.     Dues reports and contributions are due by the 10th day following the month in which the work was performed.  Dues reports and contributions that are not submitted in a timely fashion are assessed liquidated damages at 10% of the report amount.

29.     Notwithstanding the obligations imposed by the Agreement, Company has performed covered work from February 1, 2025 forward and failed to withhold and/or report to and forward the Union dues that were deducted, or should have been deducted, from the wages of its employees, thereby depriving the Union of income and information.

8

30. Further, Company's failure to submit timely monthly dues reports and payments per the terms of the Agreement will result in the assessment of accumulated liquidated damages, as those will also be subject to liquidated damages assessed at 10% of the untimely paid amount.

31. Pursuant to the Agreement, Company is liable to the Funds for the unpaid Union dues, as well as for the liquidated damages, accumulated liquidated damages, audit costs, and for the Funds' reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court:

a. order Defendant Banks Masonry Construction, LLC, to submit to the Audit for the period of February 1, 2025 to present;

b. enter judgment in sum certain in favor of the Funds and against Defendant Banks Masonry Construction, LLC, based on the amounts found due and owing per the Audit, covering February 1, 2025 to present, including for all unpaid monthly dues reports from February 2025 forward, plus all related liquidated damages, accumulated liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

Chicago & Vicinity Laborers' Pension Fund, et al.,

September 25, 2025

By: ___/s/ Sara S. Schumann
        *Counsel for Plaintiffs*

Laborers' Pension and Welfare Funds
11465 W. Cermak Rd.
Westchester, IL 60154
(312) 692-1497
SaraS@chilpwf.com

9



# LiUNA!

## CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McClintock Drive • Suite 300 • Burr Ridge, IL 60527 • Phone: 630/655-8289 • Fax: 630/655-8853

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between _____Banks Masonry Construction Llc_____ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Chicagoland Associated General Contractors ("CAGC"), the Great Lakes Contractors Association ("GLCA"), the Illinois Road and Transportation Builders Association ("IRTBA"), the Mason Contractors Association of Greater Chicago ("MCAGC"), the Underground Contractors Association ("UCA"), the Chicago Area Drywall Supply Association ("CADSA"), the Chicago Area Independent Construction Association ("CAICA"), the Chicago Area Rail Contractors Organization ("CARCO"), the Chicago Area Scaffolding Association ("CASA"), the Contractors Association of Will and Grundy Counties ("CAWGC"), the Concrete Contractors Association of Greater Chicago ("CCAGC"), the Chicago Demolition Contractors' Association ("CDCA"), the Illinois Environmental Contractors Association ("IECA"), the Illinois Small Pavers Association ("ISPA"), and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.45 per hour effective June 1, 2021; $2.50 per hour effective June 1, 2022; $2.55 per hour effective June 1, 2023; $2.60 per hour effective June 1, 2024; and $2.65 per hour effective June 1, 2025, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2021, the minimum wage rate shall be $45.90 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the gross payroll earnings of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross payroll earnings and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended, which is incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit Union dues, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph allows the Union to take any other legal and economic action, including but not limited to all remedies at law or equity. It is understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2021 (unless dated differently below) through May 31, 2026, and shall continue thereafter unless there has been given written notice, by certified mail by either party, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. **Execution.** The signatory below warrants his or her receipt of the applicable association Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: _____February 3_____ , 20 _25_

ACCEPTED:
Laborers' Local Union No. _____5_____

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Joseph V. Healy, Secretary-Treasurer

Applicable association collective bargaining agreement(s): *CAICA

_____Banks Masonry Construction llc_____
(Employer)

FEIN No.: _____

By: _Jamaine Banks_
(Print Name and Title)

_Jamaine Banks_
(Signature)

_99 S. Mayfair Place_
(Address)

_Chicago Heights, IL 60411_
(City, State and Zip Code)

_708-653-2629_
(Telephone/Telefax)

_jbanks5mi@yahoo.com_
(Email Address)

(ver. 2021)     WHITE - LOCAL UNION   •   CANARY - TRUST FUND   •   PINK - DISTRICT COUNCIL   •   GOLD - EMPLOYER

**Exhibit A**

# RICHARD J. WOLF AND COMPANY, INC.

Post Office Box 591
Palos Park, Illinois 60464
(708) 923-0909
Fax (708) 923-0910

 36

July 10, 2025

Laborers' Pension & Welfare Funds
11465 Cermak Road
Westchester, IL 60154
Attn: Alicia Grossi

        RE:    Banks Masonry Construction LLC (36047)
                  99 S. Mayfair Place/Chicago Heights, IL 60411
                  (708) 653-2629 – Cell – Jonaine Banks

Dear Alicia:

We are having a difficult time scheduling the above audit on behalf of the Laborers' Pension & Welfare Funds for the period 2/1/25 to current.

We had a schedule date on 5/21/25. When the auditor arrived, nobody was there. We have left several messages and emails with no response from the contractor.

We have gone as far as possible without assistance and are referring the matter to you for disposition.

We will place our file on "hold" until we are notified to proceed with the audit.

If you have any questions, please call our office at (708) 923-0909.

        Sincerely,

        RICHARD J. WOLF AND COMPANY, INC.

        Richard J. Wolf

RJW/lt

**Exhibit B**